IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------

BORIS OSADCIW

                              Plaintiff

         -vs-

GANLEY CHRYSLER JEEP, et al.

                        Defendants.

------------------------------------------------------

: CASE NO.  1:09-CV-00486
:
: MEMORANDUM OF OPINION AND
: ORDER GRANTING DEFENDANTS'
: MOTION FOR SUMMARY JUDGMENT
: (Resolving Docket #18 and #20)
:
:
:
:
:
:
:

UNITED STATES DISTRICT JUDGE LESLEY WELLS

      Plaintiff, Boris Osadciw, initiated this lawsuit alleging claims of age discrimination

under Ohio Revised Code §4112.01(A)(2)[1] and 20 U.S.C.A.§626(b) ("ADEA").  (Docket

#1).  The complaint also asserts a claim for negligent hire/retention/supervision under state

law.  Id. All claims are asserted against Mr. Osadciw's former employer, Ganley Chrysler

Jeep ("Ganley")[2] and another entity known as Ganley Management Co. ("GMC")

(collectively "Defendants").

---

[1] In his brief in opposition (Docket #19), Mr. Osadciw states that he "does not wish to pursue his
state claims against Defendants and requests [this] Court to dismiss this claim without prejudice," based
on the 2 June 2009 Supreme Court of Ohio decision in Meyer v. United Parcel Service, 122 Ohio St.3d
104 (2009).  Meyer establishes with legal certainty that the statute of limitations for age discrimination
claims brought under O.R.C. §4112.99 is six months, and Mr. Osadciw did not bring his claim within that
time-frame.  (Docket #19 at 6).  Defendants seek summary judgment on this claim for the same reason;
i.e., that it is time-barred.  (Docket #18 at 5).

[2] Ganley Jeep ceased operations in June 2009, and its motor vehicle dealers license was
cancelled after Chrysler announced it was filing bankruptcy and "pulled the franchise." (Aboid Dep. at 11).

On 3 December 2009, Defendants moved for summary judgment (Docket #18). Mr. Osadciw opposed the motion (Docket #19) and Defendants replied (Docket #21). In his brief in opposition (Docket #19), Mr. Osadciw attaches, as Exhibit 10, the deposition transcript of Russell Harris given in another case[3] and attaches documents purporting to be Ohio Secretary of State "public records" as Exhibit 11.    Both exhibits are the subject of a motion to strike (Docket #20).  Mr. Osadciw has responded to the motion to strike (Docket #22) and Defendants have replied. (Docket #23).  The Court will address the motion to strike herein.

For the reasons discussed below, the Court will grant Defendants' motion to strike, in part, and grant Defendants' motion for summary judgment.

## I.    BACKGROUND

Mr. Osadciw was employed as a salesperson at Ganley from February 2006, until 8 October 2007, when he was terminated. (Docket #18 at 1-2; Docket #19 at 4).  Ganley states that Mr. Osadciw was terminated after "a review of [his] performance revealed that he was not performing up to Ganley Chrysler-Jeep's expectations." (Docket #18 at 2, citing Deposition of Fred G. Aboid,[4] attached thereto as Exhibit C, at 59-60 ("Aboid Dep."); Deposition of Ronald J. Harell,[5] attached thereto as Exhibit D, at 64-70 ("Harell Dep.")).

---

[3]The deposition was taken on 2 December 2002, in Felix v. Ganley Chevrolet, Inc., Cuyahoga County Court of Common Pleas Case No.: 454238.  (Docket #19, Exhibit 10 thereto, "Prior Harris Dep.") Mr. Harris identifies himself as the general counsel for all Ganley owned dealerships and "GMC concedes that its General Counsel and Secretary, Russell W. Harris, provides legal support services to" Ganley. (Docket #21 at 11).

[4]Mr. Aboid was the general manager at Ganley. (Docket #18 at 2; Docket #19 at 1).

[5]Mr. Harell was the sales manager at Ganley from September 2007, to November 2007, after which he was terminated for "lack of sales."  (Docket #18 at 18, citing Aboid Dep. at 51; Harell Dep. at 120).

Specifically, Mr. Aboid testified that Mr. Osadciw was terminated for "lack of productivity" and Mr. Harell testified that Mr. Osadciw was terminated for being "rude" or "gruff" with customers and for production problems "as far as sales units." (Aboid Dep. at 59; Harell Dep. at 66-67, 69). Mr. Osadciw states that his productivity was fine and that he sold more cars than the national average[6] in February, May, June, July, August, and October of 2007. Mr. Osadciw also states that Mr. Harell told him he was being terminated due to down-sizing, not for "lack of productivity." (Docket #19 at 4; Deposition of Boris Osadciw, attached thereto as Exhibit A, at 14 ("Osadciw Dep.")). Mr. Osadciw believes that he and two other older employees were terminated because of their age.[7]  (Docket #19).

At the time Mr. Osadciw was hired, he was managed by Jim Bohan. (Osadciw Dep. at 45-46; Aboid Dep. at 14; Docket #19 at 2). In September 2007, Mr. Harell became the sales manager after Mr. Bohan did not return from vacation. (Aboid Dep. at 48-49; Osadciw Dep. at 18; Harell Dep. at 16-19). Mr. Osadciw states that after Mr. Harell was hired his "initially productive work experience was destroyed[.]" (Docket #19 at 2).

A few weeks after Mr. Harell started working at Ganley, he hired three new, younger, and less experienced employees: (1) Steve Erne (a friend of Mr. Harell's, born 10 August 1985, with 1.5 years of experience); (2) Randy Eggler (Mr. Harell's 22-year-old stepson with no sales experience); (3) Oksana Gera (born 25 June 1976, with no sales experience). (Harell Dep. at 35-39; Aboid Dep. at 53-57; Deposition of Steve Erne, attached as Exhibit

---

[6] Mr. Harell testified that the national sales average is 7-8 cars per month. (Harell Dep. at 41-42).

[7] Mr. Osadciw was 60 years old at the time of his termination. (Docket #18 at 2; Docket #19 at 4). The other two sales people that were fired, John Poulton and Roger Golub, were 53 and 60 years old respectively. Mr. Poulton was a plaintiff in the instant matter but his claims were dismissed on 4 November 2009, by way of a joint notice of dismissal. (Docket #16).

5 to Docket #19 ("Erne Dep.") at 8, 11; Deposition of Oksana Gera, attached as Exhibit 2 to Docket #19 ("Gera Dep.") at 25). A salesperson by the name of Robert Boker, who was "in his thirties," was also hired around this time, but Mr. Harell states that he was "already there" when Mr. Harell started and he did not know if Mr. Aboid or Mr. Bohan hired him. (Harell Dep. at 37, 39). All four of the new salespeople were terminated and/or otherwise resigned at or around the time Mr. Osadwicz was terminated. (Docket #18, citing Ganley's Responses to Request for Admission Nos 47-48, attached as Exhibit B thereto; Docket #19 at 16).

Mr. Osadwicz states that Mr. Harell "'spent more time talking to' the younger workers, 'paid more attention to their deals, *** tried to resolve their situations' and did not speak with the older workers." (Docket #19 at 3, citing Osadciw Dep. at 15, 98-99). Mr. Osadwicz states that Mr. Harell's behavior isolated the older workers from the rest of the salespeople. Id. Mr. Osadciw also states that, "Mr. Aboid "made 'at least' *** 'five to ten' age-related comments to" him and regularly made reference to him "as the 'old man.'" (Docket #19 at 4). Mr. Osadciw further alleges that Mr. Harell also "made age related comments," about him. Id. In his deposition, however, Mr. Osadciw testified that Mr. Harell made no statements about his age. (Osadciw Dep. at 28).

Mr. Osadciw also asserts a claim for negligent hiring, retention, and training of Mr. Harell. Mr. Osadciw alleges that Defendants "negligently hired Harell and Aboid." (Docket #19 at 18).[8] Mr. Osadciw further states that Defendants "allowed Harell and Aboid to engage in discriminatory behavior [and] did not care to notice that Ganley failed to

---

[8]Mr. Osadciw's complaint only asserts a claim for negligent hiring/retention/training against Mr. Harell, not Mr. Aboid.

4

implement anti-discrimination policies." (Docket #19 at 18).  Mr. Osadciw acknowledges that Mr. Harell was terminated shortly after he was hired, but states that he was not terminated "because of his illegal acts of discrimination." (Id. at 19).

## II.    SUMMARY JUDGMENT STANDARD

When "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,]" summary judgment shall be entered in favor of a moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323;  see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir.1991) (moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial", quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987)).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986), quoting Fed. R. Civ. P. 56(e)).  Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir.1995).  Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary

5

judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Michigan Protection and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir.1994) (marking as standard that the plaintiff must present "more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff"). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex Corp., 477 U.S. at 324. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted).

6

### III.    LAW AND ANALYSIS

#### A.    State Law Age Discrimination Claim

As noted above, both parties concede that Mr. Osadciw's age discrimination claim brought under O.R.C. §4112.02(A), 4112.02(N), and 4112.99 is subject to a six-month statute of limitations and that Mr. Osadciw did not timely file his claim. Defendants, however, seek summary judgment on this claim while Mr. Osadciw asks the Court to dismiss this claim without prejudice.

"The Federal Rules of Civil Procedure provide that once a defendant has filed an answer or motion for summary judgment 'an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper.'" Rosenthal v. Bridgestone/Firestone, Inc., 217 Fed.Appx. 498, 500 (6th Cir. 2007), citing Fed. R. Civ. P. 41(a)(2). "Whether dismissal should be granted under the authority of Rule 41(a)(2) is within the sound discretion of the district court." Grover by Grover v. Eli Lilly and Co., 33 F.3d 716, 718 (6th Cir.1994), citing Banque de Depots v. Nat'l Bank of Detroit, 491 F.2d 753, 757 (6th Cir.1974)). "A party may not voluntarily dismiss a claim without a court order after a motion for summary judgment has been filed." Rosenthal, 217 Fed.Appx. at 500, citing Fed. R. Civ. P. 41(a)(1)(A).

Generally, dismissal should not be granted in such context unless "the defendant would suffer 'plain legal prejudice' as a result of a dismissal without prejudice, as opposed to facing the mere prospect of a second lawsuit." Grover, 33 F.3d at 718, quoting Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 217 (1947); Kovalic v. DEC Int'l, Inc., 855 F.2d 471, 473 (7th Cir.1988)). "In determining whether a defendant will suffer 'plain legal

7

prejudice,' a court should consider such factors as 'the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant.'" Rosenthal, 217 Fed. Appx. at 500, quoting Grover, 33 F.3d at 718, Kovalic, 855 F.2d at 474.

Plain legal prejudice is readily found "where dismissal results in stripping a defendant of an absolute defense." Rosenthal, 217 Fed.Appx. at 500. "At the point when the law clearly dictates a result for the defendant, it is unfair to subject him to continued exposure to potential liability by dismissing the case without prejudice." Grover, 33 F.3d at 719. See also Phillips v. Illinois Cent. Gulf R.R., 874 F.2d 984, 987 (5th Cir.1989) (holding that clear legal prejudice would result from prejudice if in a second suit a defendant "would be stripped of an absolute defense."); Kern v. TXO Prod. Corp., 738 F.2d 968, 970 (8th Cir.1984) ("If defendant has already won its case, reimbursement of fees and expenses cannot make it whole from the injury of being sued again, perhaps this time to lose.").

Thus, even if the Court were to construe Mr. Osadciw's notice to the Court that he "does not wish to continue the pursuit of his state claim of age discrimination" as a proper Civ.R. 41(a)(2 motion, plain legal prejudice to Defendants would result because they would be denied an absolute defense. All parties concede that Mr. Osadciw's state law age discrimination as pled in the complaint is time-barred.

Based on the foregoing, Mr. Osadciw's state law age discrimination claim brought under O.R.C. §4112.02(A), 4112.02(N), and 4112.99 will be dismissed with prejudice.

### B. ADEA

The ADEA forbids an employer to "fail or refuse to hire or to discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1). "To establish a prima facie case of age discrimination, plaintiff bears the burden of demonstrating that (1) she was a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) either she was replaced by a person outside the protected class, or she was treated differently than a similarly situated non-protected employee." Mitchell v. Toledo Hosp., 964 F.2d 577, 582-83 (6th Cir.1992).

"If the plaintiff establishes [a] prima facie case, the burden then shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" Kline v. Tennessee Valley Authority, 128 F.3d 337, 342 (6th Cir. 2003), quoting Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If the defendant meets this burden, the plaintiff must demonstrate that the employer's stated reason was pretext. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804 (1973).

A plaintiff may establish a prima facie case of discrimination either through direct evidence of intentional discrimination, or circumstantial evidence giving rise to an inference of discrimination, the latter of which is analyzed under the foregoing McDonnell Douglas paradigm. Abdulnour v. Campbell Soup Supply Co., 502 F.3d 496, 501-502 (6th Cir. 2007), citing McDonnell Douglas, 411 U.S. 792. Direct evidence and the McDonnell Douglas formula comprise "two different evidentiary paths by which to resolve the ultimate issue of defendant's discriminatory intent." Blalock v. Metals Trades, Inc., 775 F.2d 703, 707 (6th Cir. 1985); Kline, 128 F.3d at 348 (explaining that "the direct evidence and the

9

circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both.")    In this case, Mr. Osadciw asserts both direct and circumstantial evidence of age discrimination.

1.    GMC

Defendants assert that GMC is entitled to summary judgment because "Plaintiff never worked for GMC and GMC does not constitute an employer under ADEA." (Docket #18 at 7).  GMC also asserts that it is entitled to summary judgment in its favor because Mr. Osadciw did not file a charge with the EEOC alleging discrimination claims against GMC.  (Id. at 8).  Mr. Osadciw argues that GMC was actually his employer because "Defendants had interrelated operations, common management, centralized control over labor relations, and common ownership or financial control." (Docket #19 at 8).  Mr. Osadciw further states that because "GMC had an 'identity of interest' with Ganley Chrysler-Jeep * * * it was unnecessary and redundant to name GMC on the EEOC charge." (Id. at 7).

In support of their argument that Mr. Osadciw was never employed by GMC, Defendants attach, as Exhibit H to their motion for summary judgment, the declaration/affidavit of Russell W. Harris, as Secretary for Ganley and general counsel and secretary of GMC. ("Harris Decl.") (Docket #18-8).  Mr. Harris states that, "GMC never employed Boris Osadciw." (Harris Decl. at ¶10).  Defendants also point to Mr. Osadciw's deposition testimony in which he states, that Ganley Chrysler Jeep is "the name of the place I was employed at." (Osadciw Dep. at 55).

Mr. Osadciw states that GMC was his employer based on the "Fourth, Fifth, and Sixth Circuit's four-factor test for determining when a parent company may be considered

an employer of a subsidiary's employees[.]" (Docket #19 at 8, citing Baetzel v. Homes Instead Senior Care, 370 F.Supp.2d 631, 639-40 (N.D. Ohio 2005). "Utilizing the four-factor single employer test, courts will treat two entities as a single employer where the court finds: (1) interrelation of operations; (2) common management, (3) centralized control over labor operations, and (4) common ownership or financial control." Baetzel, 370 F.Supp.2d at 639-40, citing Armbruster v. Quinn, 711 F.2d 1332, 1336 (6th Cir. 1983); Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1241 (2d Cir. 1995); and McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930, 933 (11th Cir. 1987).

In support of his claim that GMC and Ganley should be considered a single employer under this test, Mr. Osadciw points to the Harris Decl., in which Mr. Harris states that GMC is managed by Tom Ganley and the deposition testimony of Mr. Aboid who states that he was hired to manage Ganley by Tom Ganley. (Harris Decl. at ¶8; Aboid Dep. at 18).

Mr. Osadciw also cites the deposition testimony of Russell Harris and attaches certain "public records" from the Ohio Secretary of State, both of which are the subject of the motion to strike referenced at footnote 3 herein.

a. Deposition Testimony.

Fed. Civ. R. P. 32(a)(1) states that "all or part of a deposition may be used against a party on these conditions:

> (A)    the party was present or represented at the taking of the deposition or had reasonable notice of it;
>
> (B)    it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and

11

(C)     the use is allowed by Rule 32(A)((2) through (8).

Fed. Civ. R. P. 32(a)(8) states:

> A deposition lawfully taken and, if required, filed in any federal- or state-court action may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action. A deposition previously taken may also be used as allows by the Federal Rules of Evidence.

Defendants assert that the portions of the Prior Harris Dep that Mr. Osadciw cites[9] are not relevant and are inadmissible hearsay. (Docket #20 at 2).  Therefore, Defendants maintain, they may not be used in this action as established by Fed.R.Civ.P. 32(a)(1)(B) and 32(a)(8).  Id.  Defendants argue that the testimony is irrelevant because prior deposition testimony involved a different plaintiff, different defendant, and involved alleged conduct that occurred more than four years before Mr. Osadciw was hired by Ganley.  Id. Defendants also note that Mr. Harris refers to exhibits during his deposition in the *Felix* action that are not attached to the deposition and/or part of the record in this case. (Id. at 3).

Mr. Osadciw argues that although the parties are different in the two actions, Mr. Harris was general counsel for GMC while the *Felix* action was pending and during the instant matter and Paul Harris, Esq., was counsel of record for Defendants in both actions. (Docket #22 at 2).   Moreover, Mr. Osadciw states, he is citing the Prior Harris Dep. to establish "Ganley's blanket-wide policies and procedures" that were not "dealership specific."  (Id. at 3).

---

[9] Defendants object to Mr. Osadciw's use of pages 8, 14, 24, 41, and 45-46 of Mr. Harris's deposition testimony.  These are the only pages of the Prior Harris Dep. that Mr. Osadciw cites. (See Docket #19 at 9).

Specifically, Mr. Osadciw cites the following testimony from the Prior Harris Dep.:

> Mr. Harris is general counsel for all Ganley-owned dealerships. (Prior Harris Dep. at 8).
>
> All the dealerships "listed on Plaintiff's Exhibit 1[10] are owned and operated *** by Thomas Ganley or his son, Kenneth Ganley." (Id. at 14).
>
> Mr. Harris gave a "multi-page protocol"[11] to "a general manager" to "give to a customer who wanted additional information" about arbitration and instructed general managers about the placement of "arbitration labels" on purchase contracts. (Id. at 45-46).
>
> Mr. Harris "instructed the dealerships" about inserting arbitration language in purchase contract when it was time to reprint the documents rather than using the labels. (Id. at 24).
>
> A man named, Mr. Beaird, who "handles all the computer work for all the dealerships would know "whether every transaction would be handled through the computer or not." (Id. at 40-41).

(Docket #19 at 9).

The Court finds that the deposition testimony cited above is not relevant to the dispute before the Court and, therefore, is not admissible under the Federal Rules of Evidence. The deposition was taken in 2002, more than four years prior to Mr. Osadciw coming to work for Ganley. The only common element between the Felix case and the instant matter is that Mr. Harris was general counsel and/or provided legal support during the periods each case took place. The plaintiff is different (Mr. Felix) and the defendant is different (Ganley Chevrolet). The record before this Court does not support Mr. Osadciw's allegations that GMC "is a party in this ongoing case in Cuyahoga County," or

---

[10] Harris identifies Exhibit 1 as a list of all Ganley-owned dealerships except Ganley East, Inc. and Tomkin, Inc. (Prior Harris Dep. at 9-10).

[11] The memo containing the protocol, the arbitration labels, and the purchase contract were exhibits at deposition, but are not part of the record in this case.

that "Paul Harris, Esq. of Ulmer and Berne is an attorney of record in both the case at bar and Felix. Moreover, even if Mr. Harris's testimony did establish a "general policy" for all Ganley-owned dealerships, as opposed to providing legal advice after being engaged to provide such services to Ganley-owned dealerships, there is no evidence before the Court that tends to show that the "policies" in place in 2002, were still in place in 2007. Further, the documents about which Mr. Harris testified in his deposition were not attached to Exhibit 10 and are not part of the record before this Court. Finally, whether or not all transactions in 2002 were computerized is not relevant to this dispute.

Based on the foregoing, Defendants' motion to strike pages 8, 14, 24, 41, and 45-46 of the Prior Harris Dep. (Docket #20), which was attached as Exhibit 10 to Plaintiff's brief in opposition (Docket #19), is granted. The Court will not consider Exhibit 10.

b.    Public Records.

Defendants are also asking the Court to strike pages 3, 4, and 5[12] of Mr. Osadciw's Exhibit 11 attached to his brief in opposition. Exhibit 11 consists of 7 pages either from the Ohio Secretary of State website or related to corporate filings with the Ohio Secretary of State. Defendants argue that pages 3, 4, and 5 are not admissible because they have not been authenticated under Fed. Evid. R. 901 and are not self-authenticating under Fed. Evid. R. 902.[13]  Defendants maintain that these pages have not been authenticated by

---

[12] Defendants concede that pages 1, 2, and 6 of Exhibit 11 are admissible because they are self-authenticating.

[13]  Page 3 is titled, "Certificate of Amendment by Shareholders to the Articles of Incorporation of Midpark Chrysler-Plymouth, Inc., dated 14 October 1985, and is signed by Thomas Ganley and Russell Harris. Page 4 is titled "Consent for Use of Similar Name," and is dated 14 October 1988.  The document purports to give Mid Park Chrysler -Plymouth, Inc. the right to use the name Ganley Chrysler Plymouth. It is signed by Russell Harris as Secretary of Ganley Dodge, Inc. Page 5 is handwritten correspondence on GMC letterhead from Russell Harris seeking expedited filing of name change documents. The

14

evidence that the documents are "from the public office where items of this nature are kept" (Evid.R. 901) and do not "show the State of Ohio seal." (Docket #20 at 3-4).

There is no evidence before the Court attempting to authenticate these documents as required by Evid. R. 901.  Pursuant to Evid.R. 902, domestic public documents are self-authenticating only if they bear a state seal (902(1)), or if a public officer "certifies under seal that the signer has the official capacity and that the signature is genuine (902(2)), or the documents are "certified as correct by the custodian or other person authorized to make the certification by certificate complying with paragraph (1)(2)( or (3)" (Evid.R. (902(4)).

Mr. Osadciw has not provided a certification by any authorized person that pages 3, 4, or 5 are correct.   Pages 3, 4, and 5 do not contain State seals.  Mr. Osadciw states that the documents were printed consecutively from the official web page for the Ohio Secretary of State, "as evidenced by the page numbers at the bottom of the page." (Docket #22 at 6). Mr. Osadciw argues that every page of a multi-page document does not need to be authenticated. *Id.*

Generally speaking, Mr. Osadciw is correct that every page of a multi-page document need not be authenticated if the first page is properly authenticated.   Mr. Osadciw is also correct that pages 3, 4, and 5, are consecutively numbered (G0491-1970, G0491-1971, and GO491-1972).  However, there is no single page authenticating these consecutive pages.

---

correspondence does not contain an addressee.

Accordingly, Defendants motion to strike pages 3, 4, and 5 of Exhibit 11, which was attached to Plaintiff's brief in opposition (Docket #19) is granted. Defendants do not address page 7 of Exhibit 11, which is a Certificate of Amendment by Shareholders of Ganley Chrysler-Plymouth, Inc., dated 24 October 2001, to change the name of the dealership to "Ganley Chrysler-Jeep, Inc." It is signed by Thomas Ganley as "Chairman, President [or] Vice President" and Russell Harris as "Secretary, Assistant Secretary." The document contains a State of Ohio seal and will be considered by the Court in support of Mr. Osadciw's brief in opposition.

Based on the foregoing, the Court finds that there is no genuine issue of material fact to establish that GMC and Ganley should be treated as a single employer. Given the Court's disposition of the motion to strike (Docket #19), the only evidence properly[14] before the Court that is remotely relevant to the four factors set forth in Baetzel, is: (1) that Mr. Ganley is the sole owner of GMC (Harris Decl. at ¶8) and that Mr. Ganley hired Mr. Aboid (Aboid Dep. at 18); (2) that Mr. Aboid acknowledged that he told "Tom Ganley that [he] was going to hire Jim Bohan as sales manager" (Aboid Dep. at 26); and (3) page 7 of Exhibit

---

[14] Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex Corp., 477 U.S. at 324. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact. Id. "The absence of additional evidence to support a party's position beyond his own self-serving testimony is insufficient to overcome a motion for summary judgment." Britenriker v. Mock, 2009 WL 2392917 at FN1 (N.D. Ohio), citing Bryant v. Mahoning County Bd. of Comm'rs, 2007 WL 1725314, at *7 (N.D.Ohio); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir.1994). "Conclusory statements are insufficient in summary judgment proceedings." Shaw v. Danley, 202 F.3d 270 (6th Cir. 2000), citing Mitchell, 964 F.2d at 584. See also Brooks v. American Broadcasting Companies, Inc., 999 F.2d 167, 172 (6th Cir. 1993)(noting that in summary judgment analysis, "the district court is not required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question"); Young v. Keast, 849 F.2d 610 (6th Cir. 1988) (holding that an appellant's "self-serving and factually unsupported assertions" intended to contradict appellee's affidavits "are insufficient to withstand a motion for summary judgment").

11 addressed above. (Harris Decl. at ¶8; Aboid Dep. at 18; Docket #19, Exhibit 11 at 7).

The position of general manager is the highest position in a dealership. Thus, the hiring for such position would naturally come from outside the dealership. Mr. Harris stated, without any contradiction, that "GMC provided support services to Ganley *** when it was still operational and charged Ganley *** for the support services that it provided." (Harris Decl at ¶11). Moreover, Mr. Aboid testified that after he interviewed with Mr. Ganley, he completed paperwork and his personnel file was kept at Ganley. (Aboid Dep. at 20-21). Mr. Harris also stated that, "at all times, GMC and Ganley *** maintained separate offices, separate record keeping, separate equipment, and separate bank accounts." (Harris Decl. at ¶15). The fact that Mr. Aboid told Mr. Ganley he was going to hire Mr. Bohan as sales manager does not demonstrate "centralized control over labor operations." Baetzel, supra.  See Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990, 995-96 (6th Cir. 1997)(finding that university and contracted bookseller could not be considered a single employer even when the university retained control over which employees were assigned to staff the bookstore because the university had no control over bookseller's hiring and firing decisions).

As to Exhibit 11, Tom Ganley signed as President of Ganley Chrysler-Plymouth, Inc. almost ten years ago to change the name of that entity to the entity now known as Ganley. This does not demonstrate any of the four Baetzel factors.  To establish an interrelationship, there must be "sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer."  Armbruster, 711 F.2d at 1337.  A 10 year old public record

17

does not justify such a belief. Further, Mr. Ganley signed Exhibit 11 as President of another dealership, not Ganley.

Finally, Exhibit 11 is not related in any way to the centralized control over labor relations and does not demonstrate that GMC financially controlled Ganley or that there was common management. "Mr. Ganley is the sole owner of GMC [and] never had an ownership interest in Ganley Chrysler-Jeep or any of the other dealerships to which it provides services." (Harris Decl. at ¶¶ 8, 13). There is no evidence of common financial control, ownership interest, officers, directors, use of offices, equipment, or employees. See Baetzel, 370 F.Supp.2d at 641. That Mr. Ganley signed a document to assist one dealership with a name change  demonstrates a "support service" that GMC provided under the advice of GMC general counsel. (See Harris Decl. at ¶¶6, 11). Moreover, even if Mr. Ganley's signature was not such a "support service," he signed Exhibit 11 as an officer of another dealership, not Ganley.

Based on the foregoing, the Court finds that Ganley and GMC cannot be considered a single employer or Mr. Osadciw's employer. Accordingly, whether Ganley is an employer under ADEA because of the number of persons it employs and whether GMC is entitled to summary judgment because Mr. Osadciw failed to name GMC in his charge before the EEOC is moot.  GMC is entitled to summary judgment as a matter of law on both counts of Mr. Osadciw's complaint.

### 2. Ganley

Ganley asserts that it is entitled to summary judgment on Mr. Osadciw's ADEA claim because he "cannot establish age discrimination through either direct or circumstantial

evidence." (Docket #18 at 10).  Mr. Osadciw claims that his ADEA claim is supported by both types of evidence. (Docket #10 at10).

### a. Direct Evidence

Mr. Osadciw cites only to his deposition as direct evidence of discrimination. Even were this sufficient, Mr. Osadciw testified that Mr. Aboid made statements about his age between five and ten times, but can only specifically recall one situation in which Mr. Aboid called him an "old man" in the presence of a customer or friend. (Osadciw Dep. at 24-25). As noted above, despite Mr. Osadciw's contentions in his brief in opposition that Mr. Harell also made age-related statements, he testified in deposition that Mr. Harell made no statements about his age. (Id. at 28). It is well-established that even were Mr. Osadciw's assertions in his brief supported by affidavit, "a party cannot avoid summary judgment through the introduction of self-serving affidavits that contradict prior sworn testimony." U.S. ex rel. Compton v. Midwest Specialties, Inc., 142 F.3d 296, 303, citing Dotson v. U.S. Postal Service, 977 F.2d 976, 978 (6th Cir. 1992), cert. denied, 506 U.S. 892 (1992); Gagne v. Northwestern Nat'l Ins. Co., 881 F.2d 309, 315 (6th Cir.1989).

Finally, even if Mr. Osadciw could properly establish that Mr. Aboid made age-related statements, he has not provided any evidence to show these statements were connected to Ganley's decision to terminate his employment. "'Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden ... of demonstrating animus.'" Geiger v. Tower Automotive, 579 F.3d 614, 621 (6th Cir. 2009), quoting Bush v. Dictaphone Corp., 161 F.3d 363, 369 (6th Cir.1998). Mr. Osadciw argues that because he was treated differently than younger employees, Mr. Aboid's age-related statements did relate to his

19

termination. This argument relates, however, to the first stage of the McDonnell Douglas framework, which analyzes circumstantial evidence of age discrimination and will be considered in our discussion thereof. As such, the conduct Mr. Osadciw alleges "is not direct evidence" of age discrimination. See Geiger, 579 F.3d at 622, citing Rowan v. Lockheed Martin Energy Systems, Inc., 360 F.3d 544, 550 (6th Cir. 2004).

Mr. Osadciw has not presented any direct evidence of age discrimination under ADEA.

### b.    Circumstantial Evidence

As noted above, when a plaintiff alleges circumstantial evidence of discrimination, courts utilize a three-stage analysis. McDonnell Douglas, 411 U.S. at 802; Burdine, 450 U.S. at 252-53. However, Mr. Osadciw cannot establish a prima facie case so as to shift the burden to Ganley to establish a non-discriminatory reason for termination Mr. Osadciw.

The parties concede that Mr. Osadciw was a member of a protected class and he was over the age of 40 at the time of his termination, an adverse employment action. Ganley argues, however, that Mr. Osadciw cannot establish that he was qualified for the position or that he was treated differently than a similarly-situated, non-protected employee or was replaced by a substantially younger person. (Docket #18 at 13).

Mr. Osadciw states that he was objectively qualified for the position because he was a "hard worker, was never late, worked diligently, sold cars, and was never issued a written warning." (Docket #19 at 14; Osadciw Dep. at 65-66). Mr. Osadciw also points to Ms. Gera's deposition in which she testified that he and all of the other employees were hard workers. (Gera Dep. at 16). Mr. Osadciw further notes that Mr. Harell testified that the national average for sales in a store of Ganley's size was seven to eight cars per month.

20

(Harell Dep. at 42).  Mr. Harell further testified that in August of 2007, Mr. Osadciw sold 7 cars,[15] 10 in July 2007, 9 in February 2007, 4 in January 2007, 8 in May 2007 (1 was a split), 6 in June 2007, 8 in September 2007, and 5 in the first 8 days of October before he was terminated.  (Harell Dep. at 129-41).

Mr. Harell, however, testified that Mr. Osadciw was "a little gruff with his customers," that there had been "quite a few" customer complaints, and that "he would come across as being a little bit rude." (Harell Dep. at 64).  Mr. Harell acknowledged, however, that he could not recall a specific instance. (Id. at 67).  Mr. Harell also testified that he "very much lacked production," but could not recall how many sales units he sold. (Id. at 69).  Mr. Harell explained though that Mr. Osadciw "didn't sell enough cars to cover his *** draw *** what he was paid." (Id. at 126).  Mr. Harell explained, "based upon [his] years of experience in the industry," that performance is not acceptable if a salesperson does not sell enough cars to cover his draw. Id.  Mr. Harell also testified that he spoke with Mr. Osadciw about his performance but never wrote him up formally. (Id. at 70).  Mr. Harell testified that he and Mr. Aboid conferred about terminating Mr. Osadciw and decided together to terminate him because of work performance.

Mr. Aboid testified that Mr. Osadciw was terminated because of "lack of productivity," but did not recall his sales numbers. (Aboid Dep. at 59).  Mr. Aboid also testified that an employee's sales and commissions were recorded on "commission sheets"

---

[15] Mr. Harell testified that these numbers, which are obtained from the "wash sheets" include half sales (sales commissions split with another salesperson) as a whole car sold.  Mr. Harell cannot tell from the wash sheets how many of the units listed were actually splits rather than whole units sold.  "Wash sheets" are statements of account showing each employee's weekly draw (advance pay) less commissions due to the employee.  In some cases, if an employee did not sell enough cars to cover his draw, the employee would owe money to the dealership.  When enough cars were sold to cover the draw, the wash sheet would show the net amount due to the employee. (Harell Dep. at 121-22).

21

that were given to the employees, reviewed by him and given to the payroll department. (Id. at 64-5). Mr. Aboid acknowledged that he did not compare Mr. Osadciw's commissions sheets to those of other employees when he was making the decision to terminate him. (Id. at 65). Mr. Aboid notes that an "average salesman" sells between 12 and 15 cars per month. Mr. Aboid stated, however, that commissions and sales were not the dealerships only concern. (Id. at 67). The dealership was concerned with the "big picture" and "overwhelming customers with a great experience," which included making sure customers spoke to more than one salesperson to avoid any "lost opportunity." (Id. at 67-68). That "wasn't always happening with Boris." (Id. at 69). "He would talk to customers, and we wouldn't get that opportunity to have a fresh face[.]" Id. Mr. Aboid could not remember if Mr. Osadciw was ever disciplined for this problem, but he did discuss this issue with him "at least once." (Id. at 69-70).

"A court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case." Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 574 (6th Cir. 2003). However, "a qualified individual must perform 'at a level which met his employer's legitimate expectations.'" Id., quoting McDonald v. Union Camp Corp., 898 F.2d 1155, 1160 (6th Cir. 1990). Here, however, unlike the plaintiff in McDonald, Mr. Osadciw does not concede that he has failed to perform at the required level and points to Mr. Harell's testimony that for four of the first nine months of 2007, he sold at or above the national average of cars per month and in October sold 5 cars in just 8 days. (See Harell Dep. at 129-141). Mr. Osadciw also argues that Mr. Harell's conduct make it harder for him "to make sales and perform [his] job duties." (Docket #19 at 15). See Wexler, 317 F.3d at 574 (acknowledging that the

22

presence of additional factors leading to a drop in revenue, besides employee's performance, was sufficient evidence to create a genuine issue of material fact).

Whether Mr. Osadciw was qualified at the time of his termination is a close question. However, Mr. Osadciw has provided evidence of sales that exceed the national average at times and there is no evidence before the Court that Ganley had specific policy as to what would constitute acceptable performance. Moreover, Mr. Osadciw argues that his sales efforts were hindered by Ganley's discriminatory conduct. The Court concludes that Mr.Osadciw has created a genuine issue of material fact on the issue of whether he was qualified for the position.

The last element of a prima facie case for age discrimination under ADEA is whether Mr. Osadciw was treated differently than a similarly-situated non-protected individual or replaced by a significantly younger worker. Mitchell, 974 F.2d at 582-83; Grosjean v. First Energy Corp., 349 F.3d 332, 335 (6th Cir. 2003)

Ganley states that Mr. Osadciw's allegation that Ganley paid more attention to younger, less experienced sales people is not sufficient, even if true, to create a genuine issue of material fact on a claim for age discrimination. (Docket #18 at 15). Ganley states that the four similarly situated, non-protected (younger) persons that Mr. Ganley identifies were also terminated and/or resigned from Ganley "near the time of [Mr. Osadciw's] termination." Id. Therefore, Ganley argues, Mr. Osadciw "cannot establish that he was treated differently than any of the other four individuals that he identifies as being similarly situated to himself." Id.

Mr. Osadciw cites several instances of what he perceives to be disparate treatment and argues that because of this treatment, the younger workers "assumed the sales

23

Osadciw would have received were he still to be employed with Defendants." (Docket #19 at 15). Mr. Osadciw further argues that the fact that the younger employees were also terminated "only leads [sic] credence to the theory that these younger individuals were not qualified for the position they held." Id.

Mr. Osadciw cites his own deposition testimony as evidence of the alleged disparate treatment:

> Harell 'spent more time talking to' the younger workers, 'paid more attention to their deals,' and 'tried to help resolve their situations.' (Harell Dep. at 98-99).
>
> Harell would 'sit around joking with them' and had special 'little meetings' with the younger workers. (Id. at 99).
>
> Harell did not treat the older workers in this way and played 'favorites' with the younger workers 'because they were more in his age bracket.' (Id. at 102).
>
> Harell did not give the older workers the same face time and assistance in closing a deal and working with customers as he did younger employees. (Id. at 15).
>
> Osadciw recalls 'John [Poulton], myself, Roger [Golub], any of [us], the older salesmen, would make that effort and Ron Harell [sic] would walk away from us sort of ignoring us; yet the team that he brought in . . . he would get out in the middle of the parking lot [and] talk to them. When they would turn a customer, Ron would get in, involved in it, it was . . . like we were being ignored.' (Id. at 15).
>
> Harell ignored and marginalized the older workers, making it harder for them to make sales and perform their job duties. He would not speak with the older workers but 'he would constantly talk to the younger guys there.' Id.

Mr. Osadciw concedes that each of the younger employees was terminated near the time of Mr. Osadciw's termination. (Docket #19 at 15, 16). However, neither party has presented any legal support for the argument that the termination of similarly situated

24

employees would or would not negate any preferential treatment the younger employees may or may not have received while still employed.

The problem for Mr. Osadciw, however, is that he fails to cite any specific instances of preferential treatment, does not include any independent support for the general assertions he does make, and fails to establish that he was replaced at all, let alone by a significantly younger person.

"The party opposing a motion for summary judgment 'must present some 'specific facts showing that there is a genuine issue [of fact] for trial.'" Moore v. Holbrook, 2F.3d 697, 699 (6th Cir. 1993), quoting Celotex, 477 U.S. at 324. See also, Fuelling v. New Vision Medical Laboratories, LLC, 284 Fed.Appx. 247 (6th Cir. 2008)(granting summary judgment to employer where employee fails to cite specific examples of discriminatory conduct, thereby failing to establish a prima facie case). "In an age-based disparate impact claim, the plaintiff may not 'simply allege that there is a disparate impact on [older] workers, or point to a generalized policy that leads to such an impact.'" Love v. Electrical Power Bd. of Chattanooga, EDP, 2010 WL 3278230 at *4 (6th Cir. 2010), quoting Smith v. City of Jackson, 544 U.S. 233, 241 (2005). "Rather, the [plaintiff] is responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." Smith, 544 U.S. at 241.

Moreover, the fourth element of a prima facie case for age discrimination requires the plaintiff to show that he or she was replaced by a significantly younger person. Grosjean, 349 F.3d at 335. As previously noted, Mr. Osadciw has not established that he was replaced by anyone, significantly younger or otherwise.

25

Based on the foregoing, the Court finds that Mr. Osadciw has not established a prima facie case for age discrimination under ADEA. Ganley will be granted summary judgment on Count One of Mr. Osadciw's complaint.

### C.    Negligent Hire/Retention/Supervision

In his second claim for relief, Mr. Osadciw asserts that "Ganley knew or had reason to know that Harrell [sic] was or would discriminate against [him] based on age and posed a threat to [his] *** employment *** [thereby] breaching its duty through negligent hire, retention and/or supervision of employees." (Docket #1 at 5).

"The elements of negligent retention are: 1) an employment relationship; 2) incompetence of the employee; 3) actual or constructive knowledge of the incompetence by the employer; 4) an act or omission by the employee which caused the plaintiff's injuries; and 5) negligent retention of the employee by the employer, which action is the proximate cause of the plaintiff's injuries." Payton v. Receivable Outsourcing, Inc., 163 Ohio App.3d 722, 736 (Ohio App. 8 Dist. 2005) (citations omitted).

Ganley asserts that it is entitled to summary judgment on this claim because "there is no evidence establishing, much less suggesting, that Ganley knew or should have known of any alleged age discrimination by Mr. Harell"; i.e., Mr. Osadciw cannot establish the third requirement of such claim. (Docket #18 at 17). Mr. Osadciw admitted "that he never reported the alleged discrimination to anyone during his employment at Ganley." (Id.; Osadciw Dep. at 43-4). Ganley also notes that it terminated Mr. Harell's employment "after only a few months." (Docket #18 at 18).

The Court agrees with Ganley. Mr. Osadciw argues that because Ganley never conducted any anti-discrimination training, Ganley "knew or should have known of Aboid

26

and Harell's incompetent acts and/or omissions[.]" Mr. Osadciw does not cite any legal authority for the proposition that if an employer does not conduct anti-discrimination training or have a anti-discrimination policy in place, knowledge of any discriminatory practices may be imputed to that employer.  In fact, there is no support for such proposition. Moreover, Mr. Osadciw acknowledges he never reported any discriminatory behavior and Mr. Aboid, Mr. Harell, Ms. Gera, and Mr. Erne all deny knowledge of any age-related discriminatory practices. (Aboid Dep. at 96; Harell Dep. at 109; Erne Dep. at 26; Gera Dep. at 20, 23-24).   Because Mr. Osadciw cannot establish the third factor of his claim for negligent hire/retention/supervision, Ganley is entitled to summary judgment on Count Two of Mr. Osadciw's complaint.

## IV.   CONCLUSION

For the reasons set forth above, the Court grants defendants' motion to strike Exhibits 10 and 11 to Mr. Osadciw's brief in opposition (Docket #20) in part. Mr. Osadciw's age discrimination claim based on O.R.C. §4112.01, et seq. is dismissed with prejudice. The Court will not strike page 7 of Exhibit 11.  The Court further grants Defendants' motion for summary judgment with respect to all of Mr. Osadciw's remaining claims against them. Mr. Osadciw's complaint is hereby dismissed.

IT IS SO ORDERED.

/s/Lesley Wells
UNITED STATES DISTRICT JUDGE


Dated: 23 September 2010

27